Bertram Harnett, J.
It is time to re-evaluate and lay aside obsolete precedents inhibiting in contested matrimonial matters a wife’s right to examine before trial into her husband’s financial affairs. This conclusion is compelled by the underlying policies of the pretrial disclosure provisions of the CPLR, the changed legislative and high court philosophies with respect to divorce, and revised social expectations prevailing as to the rights and status of women.
In this action by a wife for separation, the husband counterclaims for divorce and moves to strike his wife’s request for pretrial interrogatories seeking information about his income and expenses. No special circumstances, beyond the need for information ordinarily germane to a litigation, are relied upon to warrant the inquiry. The issue of whether a wife in a matrimonial lawsuit has the pretrial rights of litigants generally is then squarely bef ore us.
There are extensive rules (CPLR art. 31) allowing parties to lawsuits generally to question their ' opposing parties in advance of trial, including safeguards to prevent abuse. This enables parties to prepare intelligently, and avoids unjustified surprises in the course of trial. Very often the pretrial examination leads to enough understanding of the full merits of the case that it is settled without the necessity for further disputation.
The Governor of New York State, in his 1962 message approving the CPLR, commented on the “ vital importance ” of modern pretrial disclosure. He said: “ A just decision on the merits, expeditiously reached, is best achieved when the ‘ sporting theory of justice ’ is laid to one side and well-prepared counsel, each aware of the other’s case, present their respective cases to the Court ”. (Memoranda on Legis. Bills Approved, April 4,1962; N. Y. Legis. Annual, 1962, p. 332.)
Weinstein-Korn-Miller, New York Civil Practice (vol. 3, par. 3101.04, p. 31-11) reports the governing principle to be: “ that disclosure extends to all relevant evidence and all information reasonably calculated to lead to relevant evidence if not otherwise barred ”.
It is doubtless fair to make the pragmatic assertion that, in the customary matrimonial dispute, the financial affairs are *1035 not only relevant, they are usually what most of the fighting is about.
There is no New York statutory limitation of pretrial disclosure, either direct or implied, specially for divorce eases. Any inhibitions which exist are purely Judge-made. Inexplicably, the practice varies up and down New York State turning on where the trial happens to take place and the rules to a dead marriage to retain [the] illusory and deceptive status ” of being subject to its controls.
The Third and Fourth Appellate Departments (up-State) appear to permit inquiry in matrimonial matters into the husband’s income and assets without showing of special circumstances. (Plohn v. Plohn, 281 App. Div. 1056; Berlin v. Berlin, 17 Misc 2d 768.)
On the other hand, until only four months ago, the general rule was considered in the populous First Department (Manhattan and Bronx) to require a prior showing of “ special circumstances ” in all matrimonial cases before pretrial examination would be ordered. This was regardless of whether there the divorce was contested or uncontested. (Mook v. Mook, 13 A D 2d 465, 466; Garfinkel v. Garfinkel, 2 A D 2d 965; Liebmann v. Liebmann, 18 A D 2d 611; Of. Schwartz v. Schwartz, 23 A D 2d 204.)
By virtue of Stern v. Stern (39 A D 2d 87), however, the' First Department has seemed to move over to join the even more populous Second Department (Brooklyn, Queens, Richmond and seven suburban counties) with a more intermediate posture. The Second Department has in the past often distinguished between “contested” and “uncontested” matrimoniáis. It has permitted disclosure in contested matrimoniáis only where the examining party can by specific motion show special circumstances to warrant such disclosure, but reversed the rule for uncontested eases affirmatively requiring disclosure in those cases unless there were contrary “ special circumstances ” shown. (Plancher v. Plancher, 35 A D 2d 417, 422, affd. 29 N Y 2d 880; Campbell v. Campbell, 7 A D 2d 1011.) Analytically viewed, notwithstanding the labels, this reverse rule for uncontested divorce cases is, in practice, substantially that set forth in CPLR 3103 for prevention of abuse of pretrial discovery in civil actions generally.
The purpose of the restrictive rule in contested cases is deeply rooted in the old New York antipathy to divorce, and an apparent judicial feeling that the exacerbations of pretrial procedures might upset the possibilities of reconciliation. (See Hunter *1036 v. Hunter, 10 A D 2d 291, 294.) However, those concepts originated in a vastly different judicial milieu. It was before the sweeping revisions liberalizing divorce in New York and before the flat declaration of Gleason v. Gleason (26 N Y 2d 28, 35) that “ it is socially and morally undesirable to compel couples to a dead marriage to retain [the] illusory and deceptive status ” of being subject to its controls.
Most significantly, the restrictive rules which eye reconciliation prospects originated before the current statutory conciliation ■procedures (Domestic Relations Law, art. 11B). Reconciliation efforts are now built into the statutory divorce machinery and divorce matters do not proceed until reasonable reconciliation possibilities are exhausted. In the McKinney’s Practice Commentary (McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 3101, pp. 1920) Prof. David D. Siegel observes: “ The strained personal relationships which lead to marital litigation will still often afford the parties more incentive than usual to harass one another, which suggests in turn that there still may have to be some restrictions on disclosure in some such cases. But what is lacking today is the generic reason (the hope of reconciliation) prior law had for restricting disclosure in matrimonial cases, and with the fall of the reason the restriction should fall too. If, today, disclosure is sought to be restricted in a matrimonial case, the restriction should be imposed not because of any pervasive reservation about the matrimonial case generally, but for special reasons peculiar to the case at hand and taken cognizance of by the court by individual protective order under CPLR 3103 ’ ’. (Cf. Dunlap v. Dunlap, 34 A D 2d 889. Also, see, Mr. Justice Life’s cogent comments in Hochberg v. Hochberg, 63 Misc 2d 77; 2 Foster-Freed, Law and the Family, § 22:33, p. 93 [Rev. ed., 1972]; Grossman, Law of Domestic Relations, § 815, p. 601 [Rev. ed., 1955].)
Actually, the Second Department’s rule is substantially encroached by treating a formally ‘ ‘ contested ’ ’ matter as “ unoontested ” if it is not 11 seriously ” contested. (Plancher v. Plancher, supra.) (Is this not faintly reminiscent of the problems inherent in a “ slight ” case of pregnancy?) One way or another, most recently reported cases compel disclosure in the guise of no contest or even the contrivance of special circumstance. Why not now state the rule for what it is coming to be in practice, and what it should be?
The realities are that significant financial disputation intrudes in most contested matrimonial matters, and that it is the only real issue in a disturbingly high percentage of cases. Yet, it *1037 is precisely the wife in the contested action who most needs the conventional tool of pretrial discovery. Many cases are hotly disputed in the areas of grounds for divorce and child custody, solely to have leverage for the crucial financial settlements. The insistence on ultimate contest in financial matters is likely more destructive to the remaining family fiber than anything else. Only a tiny number of cases find reconciliation after the litigation has commenced; yet in every case where there are children or continuing alimony payments, there must be an ongoing relationship. The family effects of these legally sponsored financial donnybrooks are incalculable.
It may, in fact, be queried whether .restrictive disclosure rules foster more conflict than reconciliation. Nondisclosure of the husband’s financial circumstance usually leads to greater mistrust, charges of deceit, and the feeling by the wife of having to fight in order to compensate for her disadvantaged position. It is indeed ironic that the rules of limiting pretrial disclosure would seem quantitatively to exacerbate proceedings more by encouraging husbands, bent upon minimizing financial exposure, to contest the divorce on the merits, even though the marriage is dead, for it is only in the “ seriously” contested case that he might have the advantage of being insulated from pretrial disclosures. He therefore blocks and resists, waiting for the wife and her lawyer to exact the financial data bit by bit.
This proceeding here is typical. It has all the familiar trappings of a “ contested ” matter, including many prior motions, accusations and counteraccusations. There are infant children, and the parties have been separated for two years. Nothing remotely indicates a climate of .reconciliation. This court could, if it wished, base its finding on “ special circumstances ”. For instance, the parties have been apart for two years, isolating the wife from information a resident wife might have. She claims no knowledge of the financial affairs. There is particular bitterness here and little apparent chance of reconciliation. But the court prefers not to rest on this aspect; it would rather put aside the legal game and go to the fundamental justice of the matter.
Th existing rule is lodged in an aura of machismo, the uniquely Spanish articulation of an overriding emphasis on masculinity, which, according to some sociologists is a means of suppressing women. (See New York Magazine, Aug. 7, 1972, p. 62.) Why should a husband have an edge in the key aspect of matrimonial litigation? Is reconciliation not a matter for the husband and wife to resolve based on full knowledge of their common affairs? The days of the common law when the husband and the wife *1038 were one, and the husband was the one, are long gone. The arbitrary sacrifice of the woman’s interest by essentially male courts, presumably to keep marriages alive, is at odds with modern expectation.
It is useless to observe that the ‘ ‘ special circumstances ’ ’ rule works both ways, protecting the affluent wife from an unknowing husband. First, the large majority of cases today present the knowledgeable husband in financial control and the unknowing nonbusiness wife. Second, where the roles are reversed, the husband should have the same rights of financial inquiry, for the same reason stated. (Kover v. Kover, 29 N Y 2d 408, 414.)
This is not to say that all requests for pretrial examination of family finances would or should be granted “ willy-nilly ”. The same rules preventing abuse of pretrial discovery in civil matters generally continúe to apply to matrimonial matters. (CPLR 3103.) Accordingly, there are appropriate safeguards residual in judicial discretion to “ prevent unreasonable annoyance, expense, embarassment, disadvantage, or other prejudice to any person or the courts ”. (CPLR 3103, subd. [a].) (See Matter of Welsh, 24 A D 2d 986.) Anything special to a particular case which warrants special relief could be raised for that case. Essentially, the modern rule must be that pretrial disclosure in all divorce actions should follow the pretrial discovery rules of civil cases generally.
Accordingly, the wife in this case is entitled to pretrial discovery, although, like any pretrial disclosure procedure, the interrogatories must seek information that its material, pertinent and not already disclosed by the party to be questioned. (CPLR 3101, subd. [a].) The wife has already received in her husband’s prior affidavits the pertinent information sought in interrogatories 13 (c) and 15, and they are therefore stricken. The motion to strike the interrogatories is otherwise denied, without prejudice to any future application upon a satisfactory showing that the information sought is not material or is unduly burdensome to produce.